# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED FIRE & CASUALTY COMPANY,<br><br>        Plaintiff,<br><br>vs.<br><br>APPLIED FINANCIAL, INC.,<br><br>        Defendant. | No. C05-43-LRR<br><br>**ORDER** |

_____

## TABLE OF CONTENTS

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*    *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*   *PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       *A.*     *Motion to Dismiss for Lack of Personal Jurisdiction* . . . . . . . . . . 4

             *1.*     *Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

             *2.*     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

             *3.*     *Disposition* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       *B.*     *Motion to Dismiss for Improper Venue* . . . . . . . . . . . . . . . . . . . 14

       *C.*     *Discretionary Venue Transfer* . . . . . . . . . . . . . . . . . . . . . . . . . 15

*V.*     *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# I. INTRODUCTION

Before the court is Defendant Applied Financial, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Transfer to Utah (docket no. 8).

# II. FACTUAL BACKGROUND

Plaintiff United Fire & Casualty Co. ("United Fire") is an Iowa insurance company with its principal place of business in Cedar Rapids, Iowa. Defendant Applied Financial, Inc. ("Applied Financial") is a Utah equipment leasing company with its principal place of business in Midvale, Utah.

In 2001, United Fire agreed to purchase computer hardware, software and a tape-backup system ("the equipment") from another Iowa company for approximately $300,000. A number of equipment leasing companies, including Applied Financial, contacted United Fire and offered to buy the equipment and lease it to United Fire. On June 4, 2001, Applied Financial faxed United Fire a financing proposal. After negotiating the best rate, United Fire selected Applied Financial to fulfill all of its financing needs. On June 22, 2001, United Fire sent Applied Financial a commitment letter. The parties entered into a written lease on the same date. Applied Financial agreed to lease United Fire the equipment for thirty six months in exchange for monthly payments of approximately $9300.

The lease required United Fire to keep the equipment at its facility in Cedar Rapids, Iowa, for the entire term. The lease gave Applied Financial "free access to the [equipment] at all reasonable times during normal business hours." Applied Financial reserved the right to enter United Fire's facility to repossess the equipment if United Fire stopped making payments. Alternatively, Applied Financial could conduct a public or private sale of the equipment on United Fire's premises.

In October 2003, United Fire sought to buy the equipment from Applied Financial pursuant to a clause in the lease. Negotiations broke down. The instant lawsuit ensued in early 2005.

### III. PRIOR PROCEEDINGS

On February 1, 2005, United Fire filed a Petition for Declaratory Judgment against Applied Financial in the Iowa District Court In and For Linn County. United Fire sought judicial construction of the parties' lease. *See* Iowa R. Civ. P. 1.1102 (permitting any person interested in a written contract to have the court construe it). United Fire claimed the lease allowed it to purchase the equipment at the end of the lease term "for a price to be determined" by the parties, but Applied Financial failed to engage in the necessary negotiations to arrive at a price. United Fire sought a judicial declaration that it had the right to purchase the property for fair market value. In the alternative, United Fire sought a declaration that various provisions of the lease were "unconscionable and against public policy" because they would "essentially make it impossible for United Fire to terminate the lease without the consent of Applied Financial."

On March 1, 2005, Applied Financial filed a notice of removal with this court. Applied Financial invoked this court's diversity subject-matter jurisdiction, as the parties are diverse and there exists more than $75,000 in controversy, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

On April 18, 2005, Applied Financial filed the instant Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Transfer to Utah ("Motion"). On May 20, 2005, United Fire filed a Resistance to the Motion.

## IV. ANALYSIS

Applied Financial makes three arguments in its Motion. First, Applied Financial maintains it has insufficient contacts with Iowa, and, therefore, the court does not have personal jurisdiction. Second, Applied Financial claims that, even if the court has personal jurisdiction over Applied Financial, venue is not proper in the Northern District of Iowa. Third, Applied Financial maintains that, even if the court has jurisdiction and venue is proper, the court should, in its discretion, transfer this case to Utah for the convenience of the parties and in the interest of justice. The court considers these three arguments in turn.

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Applied Financial contends it has insufficient contacts with Iowa for this court to exercise personal jurisdiction. Thus, Applied Financial asks the court to dismiss United Fire's lawsuit. *See* Fed. R. Civ. P. 12(b)(2).

#### 1. Legal Standards

"A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 790 (8th Cir. 2005) (citing *Dakota Indus. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). Iowa's long-arm statute extends personal jurisdiction over non-residents to the fullest extent permissible under the Due Process Clause. *See* Iowa R. Civ. P. 1.306; *see also Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (recognizing same); *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (same); *Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 899 (Iowa Ct. App. 2002) ("Under Iowa Rule of Civil Procedure 1.306, Iowa's jurisdiction reaches to the widest due process parameters of the federal constitution."). Therefore, the court only needs to examine whether the exercise of personal jurisdiction

comports with due process. *Hicklin*, 959 F.2d at 739.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Thus, "[t]o satisfy due process a defendant must have sufficient minimum contacts with the forum state." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004). The contacts with the forum state must be more than "random," "fortuitous" or "attenuated." *Burger King,* 471 U.S. at 475; *accord Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984) (requiring contacts to be more than "random," "isolated" or "fortuitous"). "[T]he Defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 295, 297 (1980). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).[1]

After establishing that a defendant purposefully established such minimum contacts

---

[1] The Supreme Court has distinguished between two types of personal jurisdiction: specific jurisdiction and general jurisdiction. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984). Specific jurisdiction refers to jurisdiction over causes of action "arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8. On the other hand, "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State . . . exercise[s] 'general jurisdiction' over the defendant." *Id.* at 414 n.9. When general personal jurisdiction is asserted, the non-resident defendant must be engaged in "continuous and systematic" contacts within the forum state. *Id.* at 416.

with the forum state, a court must still consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320); *see also Dakota Indus. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389-90 (8th Cir. 1991) (applying same two-step analysis). The Supreme Court has stated that courts may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

Based upon Supreme Court precedents, the Eighth Circuit Court of Appeals instructs courts to consider five factors. *Land-O-Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir. 1983). Those factors are:

> (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614 (8th Cir. 1998); *see, e.g., Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004) (reiterating same five factors and instructing courts to consider them), *cert. denied*, 125 S. Ct. 1304 (2005). The first three factors are the most important. *Dakota Indus.*, 946 F.2d at 1390; *accord Dever*, 380 F.3d at 1074 ("Significant weight is given to the first three factors."). The factors must not be applied mechanically; they are not a "slide rule by which fundamental fairness can be ascertained with mathematical precision." *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987). Few answers to

jurisdictional questions "will be written in black and white." *Burger King*, 471 U.S. at 486 n.29 (internal quotation omitted).

The present case revolves around a contract between a nonresident defendant and a resident plaintiff. In such circumstances, due process is satisfied when the defendant "reach[es] out beyond one state and create[s] continuing relationships and obligations" with the plaintiff. *Id.* at 473 (citing *Traveler's Health Ass'n. v. Virginia*, 339 U.S. 643, 647 (1950)). The mere fact the defendant entered into a contract with a resident of the forum state is not in itself sufficient to satisfy due process. *See id.* at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." (emphasis in original)). To determine whether the defendant purposely established minimum contacts with the forum when a contract is involved, the court must consider the circumstances of the contract, including the "prior negotiations," "contemplated future consequences," "the terms of the contract," and "the parties' actual course of dealing." *Id.* at 479; *accord St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 591 (8th Cir. 2001) (directing district courts to consider the same four factors in contract cases).

United Fire, the party seeking to establish jurisdiction, bears the burden to prove it exists. *Romak*, 384 F.3d at 983-84. At this stage in the proceedings, United Fire need not prove by a preponderance of the evidence that the court may exercise personal jurisdiction over Applied Financial. *Id.* at 983. To defeat Applied Financial's motion to dismiss for lack of personal jurisdiction, United Fire need only make a *prima facie* showing of jurisdiction. *Id.* United Fire may use affidavits, exhibits, or other evidence to meet its burden. *Id.* The court must view the evidence in the light most favorable to the nonmoving party, United Fire. *Id.*

With these principles in mind, the court examines whether it may exercise personal jurisdiction over Applied Financial.

### 2. *Analysis*

Applied Financial asserts the court does not have personal jurisdiction. Applied Financial points out the following: (1) Applied Financial is a Utah corporation with its principal place of business in Utah; (2) Applied Financial has no officer or facility in Iowa; (3) Applied Financial has no bank account, address or telephone number in Iowa; (4) Applied Financial does not own or lease *real property* in Iowa; (5) Applied Financial has no employees or representatives in Iowa; (6) Applied Financial did not send any agents or representatives to Iowa in connection with the transaction in this case, and none of its employees have come to Iowa to conduct business; (7) Applied Financial is not registered to do business in Iowa; (8) Applied Financial has not designated any agent to receive service of process in Iowa; (9) the lease states it was executed and performed in Utah because it was countersigned there and payments were sent there; (10) the lease has a choice-of-law provision that states Utah law governs its construction; and (11) the lease has a forum-selection clause in which the parties consented to jurisdiction in Utah.

United Fire contends the court may exercise personal jurisdiction over Applied Financial because (1) Applied Financial advertises in Iowa on a website; (2) Applied Financial solicited United Fire through a faxed financing proposal; (3) Applied Financial sent United Fire a commitment letter; (4) Applied Financial owns $300,000 worth of equipment in Iowa; (5) the property in Iowa is the subject of this lawsuit; (6) the parties' lease contemplated that Applied Financial would have an ongoing role in the use, inspection and maintenance of the property; (7) Applied Financial representatives had telephone conversations with United Fire representatives who were located in Iowa; and (8) Applied Financial knew all along that United Fire was located in Iowa. In sum, United

Fire claims Applied Financial has sufficient minimum contacts with Iowa so that the exercise of personal jurisdiction over Applied Financial would not offend traditional notions of fair play and substantial justice.

Considering the totality of the circumstances, the court concludes United Fire has made a *prima facie* showing of personal jurisdiction. The court finds Applied Financial reasonably could have expected to be haled into an Iowa court. The parties' prior negotiations and actual course of dealing, as well as the terms and contemplated future consequences of the contract, bear out this assertion. *See Burger King*, 471 U.S. at 479.

With respect to the parties' prior negotiations and actual course of dealing, Applied Financial actively pursued a business relationship with United Fire, an Iowa resident. *See St. Jude*, 250 F.3d at 591-92 (recognizing the fact that an out-of-state corporation "pursued a business relationship" with Minnesota plaintiff was a factor weighing in favor of finding jurisdiction). Applied Financial did so with the knowledge that United Fire was an Iowa corporation, and, therefore, Applied Financial purposefully directed actions at a resident of the forum state. Importantly, the instant litigation allegedly arose out of and relates to these actions; United Fire seeks a declaratory judgment about the lease that resulted from Applied Financial's solicitation of United Fire's business. *See Burger King*, 471 U.S. at 472 (The "fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." (internal quotations omitted)). During the course of performance of the lease, Applied Financial also called and wrote United Fire. *See St. Jude*, 250 F.3d at 592 (finding telephone calls and written correspondence weighed in favor of exercising personal jurisdiction).

The terms of the lease anticipate that, in the future, Applied Financial would have ties to Iowa. Importantly, the lease required United Fire to keep the equipment—Applied

9

Financial's property—in Iowa. The Supreme Court's observations about the presence of real property in the forum state are instructive here:

> [T]he presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation. For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest.

*Shaffer v. Heitner,* 433 U.S. 186, 207-08 (1977). In the case at bar, not only is the cause of action related to the property located in the forum state, but the property is also the subject matter of the litigation. Indeed, United Fire seeks a declaratory judgment that it has the right to purchase the property in question through the parties' lease.

The court recognizes that the first nine reasons Applied Financial cites in its Motion all weigh against the exercise of jurisdiction in Iowa. *See, e.g., Jarvis & Sons, Inc. v. Freeport Shipbuilding & Marine Repair, Inc.*, 966 F.2d 1247, 1250 (8th Cir. 1992) (recognizing that the fact that a defendant had no office, agent, representative or employees in forum state weighed against exercise of jurisdiction). The court also finds that the mere fact Applied Financial operated a website that Iowa residents could view on the Internet does not justify the exercise of personal jurisdiction. United Fire fails to show that the website contained anything that would show purposeful conduct directed at Iowa. *See Lakin v. Prudential Secs., Inc.*, 348 F.3d 704, 710-11 (8th Cir. 2003) (adopting framework of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)); *see also Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999) (concluding operation of a website did not provide sufficient grounds for the exercise of

personal jurisdiction because it was a "passive advertisement").

The court, however, cannot conclude that Applied Financial's contacts with Iowa are "random," "fortuitous" or "attenuated." Applied Financial purposely directed its actions at an Iowa business and maintains a sizeable property interest in Iowa. In signing a lease that required it to own $300,000 worth of equipment in Iowa, United Fire committed an act "by which [it] purposefully avail[ed] itself of the privilege of conducting activities within [Iowa, and, thus, invoked] the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (citing *Hanson,* 357 U.S. at 253). Indeed, the lease afforded Applied Financial a number of remedies in Iowa in the event that United Fire breached the lease. The lease gave Applied Financial "free access to the [equipment] at all reasonable times during normal business hours" and granted Applied Financial the right to enter United Fire's facility to repossess the equipment if United Fire stopped making payments. The lease further stated that Applied Financial could conduct a public or private sale of the equipment on United Fire's premises.

Applied Financial may not avoid jurisdiction simply because none of its employees, agents or representatives ever physically entered Iowa. *Id.* at 476. "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.*

The court's assertion of jurisdiction does not offend notions of "fair play and substantial justice." *Dakota Indus.*, 946 F.2d at 1389. When the nature and quality of Applied Financial's contacts with Iowa are coupled with the tight nexus between those contacts and this cause of action, the court's assertion of jurisdiction is fair and just. *Id.* Because it reached out beyond Utah and created continuing relationships and obligations with an Iowa corporation, Applied Financial should reasonably expect to be haled into an

11

Iowa court. *Burger King*, 471 U.S. at 473.

One circumstance of this case requires special discussion. In its Motion, Applied Financial points to two provisions of the lease to show it is not subject to personal jurisdiction in Iowa: namely, the lease's choice-of-law provision and forum-selection clause. In pertinent part, the lease states:

> THIS LEASE SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF UTAH, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE. LESSEE AGREES TO SUBMIT TO THE JURISDICTION OF THE STATE AND/OR FEDERAL COURTS IN THE STATE OF UTAH IN ALL MATTERS RELATING TO THE LEASE, THE PROPERTY AND THE CONDUCT OF THE RELATIONSHIP BETWEEN LESSOR AND LESSEE.

(Emphasis in original).

The lease's choice-of-law provision clearly states that the lease must be construed in accordance with Utah law. It is true that choice-of-law provisions should not be "ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes." *Burger King,* 471 U.S. at 482. That said, determining what law governs the interpretation of the lease is a distinct question from minimum contacts analysis. *Id.* The court finds the mere fact that Iowa law does not govern the construction of the lease does not outweigh the other factors showing that Applied Financial has a purposeful connection to Iowa.

Likewise, the lease's forum-selection clause is not dispositive. The Supreme Court has recognized that a *mandatory* forum-selection clause "should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). "Forum selection clauses are prima facie valid and are enforced unless they

are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) (citations omitted). "They are enforceable unless they would actually deprive the opposing party of his fair day in court." *Id.* In this case, however, it is important to note that the forum-selection clause in the lease is permissive, not mandatory.

In *Dunne v. Libbra*, 330 F.3d 1062, 1063 (8th Cir. 2003), the Eighth Circuit Court of Appeals considered a forum-selection clause with similar language. The Eighth Circuit Court of Appeals concluded that there was no language in the forum-selection clause that had an ordinary meaning that would suggest the consented-to forum was the exclusive forum in which suits could be brought. *Dunne*, 330 F.3d at 1064. For example, the forum-selection clause did not use words of exclusivity, such as "exclusive," "only" or "must." *Id.* The Eighth Circuit Court of Appeals contrasted the non-exclusive language in the forum-selection clause with the contract's choice-of-law provision, which stated that the contract "shall" be construed in accordance with Illinois law. *Id.*

The same analysis applies in the case at bar. Although the forum-selection clause states that United Fire consented to the jurisdiction of the courts of Utah "in all matters relating to the lease," it does not say that suits must be brought in Utah or that Utah was the exclusive forum for all matters regarding the lease. Consequently, there is no strong presumption in favor of vesting jurisdiction only in Utah.

### 3. Disposition

In sum, the court concludes United Fire has made a *prima facie* showing that the court may exercise personal jurisdiction over Applied Financial. Such showing is consistent with the Due Process Clause. Applied Financial purposefully established the requisite minimum contacts with Iowa, and the assertion of personal jurisdiction comports with fair play and substantial justice.

### B. *Motion to Dismiss for Improper Venue*

Applied Financial claims that, even if the court exercises personal jurisdiction over Applied Financial, venue is not proper in the Northern District of Iowa under 28 U.S.C. § 1391(a). That statute provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C.A. § 1391(a). Applied Financial contends none of these three conditions is present here. In response, United Fire maintains venue is proper in the Northern District of Iowa pursuant to 28 U.S.C. § 1391(a)(1) and (2).

The court agrees that venue is proper pursuant to 28 U.S.C. § 1391(a) because elsewhere the statute states that a corporation "resides" wherever it is subject to personal jurisdiction. The statute, in relevant part, states:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

28 U.S.C. § 1391(c). As the court determined above, Applied Financial is a corporation subject to personal jurisdiction in Iowa. Venue, therefore, is proper in the Northern District of Iowa under 28 U.S.C.§ 1391(a)(1). *Cf. Dakota Indus.*, 946 F.2d at 1392 (holding California corporation deemed to reside in South Dakota under 28 U.S.C. §

1391(b)(1) because plaintiff made *prima facie* showing of personal jurisdiction in South Dakota).

The court also finds venue is proper in the Northern District of Iowa pursuant to 28 U.S.C. § 1391(a)(2). A substantial part of the property that is the subject of this action is located in Iowa. Although Applied Financial attempts to characterize this lawsuit as a dispute over a contract, not property, the court finds this a contract dispute over property and falls within the ambit of 28 U.S.C. § 1391(a)(2). In any event, the court also finds a substantial part of the events giving rise to United Fire's claim occurred here in Iowa. *See* 28 U.S.C. § 1391(a)(2). Iowa is where Applied Financial solicited United Fire's business and leased its property. *Id.*

For all the foregoing reasons, the court concludes venue is proper in the Northern District of Iowa.

### C. *Discretionary Venue Transfer*

Applied Financial maintains that, even if personal jurisdiction exists and venue is proper, the court should, in its discretion, transfer this case to Utah pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The Eighth Circuit Court of Appeals has stated that the statute requires courts to consider "three general categories . . . when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 691 (8th Cir. 1997). A district court, however, is not limited to these three enumerated factors in deciding whether to transfer a case. *Id.* "[S]uch determinations require a case-by-case

15

evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* Applied Financial, as the party seeking transfer, bears the burden of proof. *Id.* at 695-96.

Having considered the arguments presented and the *Terra* factors, the court declines to transfer the case. The court finds the totality of the circumstances does not weigh either for or against transfer. The figurative scales of justice are evenly balanced. For example, just as it is undoubtedly true that it would be more convenient for Applied Financial and its witnesses to have this case tried in Utah, it would be equally more convenient for Untied Fire and its witnesses to have it tried here in Iowa. "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Id.* at 697 (internal quotation omitted). Moreover, this case appears to be a relatively simple contract dispute. In this age of modern communication, this case can proceed just as easily in Iowa as in Utah.

It is true that retaining this case will require the court to apply Utah law. The court, however, "is equally capable of resolving the dispute" no matter what law applies. *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001).

The Eighth Circuit Court of Appeals has recognized that "federal courts give considerable deference to a plaintiff's choice of forum." *Terra,* 119 F.3d at 695. Therefore, the court gives deference to United Fire's chosen forum, that is, the Northern District of Iowa.

For all the foregoing reasons, the court declines Applied Financial's invitation to transfer this case to Utah.

## *V. CONCLUSION*

In the light of the foregoing, **IT IS HEREBY ORDERED** that Defendant Applied Financial, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Transfer to Utah (docket no. 8) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 28th day of October, 2005.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA